The next case on the court's agenda, number nine, is number 129183, Tri-Plex Technical Services, Ltd. v. Jon-Don, Ltd., et al. Counsel for the appellant, are you prepared to proceed? Yes. Good morning, Your Honor. My name is Joel Bertocchi, and I'll be arguing on behalf of all the defendants today. With me in the courtroom are Alex Wright, Dan Haas, Sam and Chuck Pierce, who represent other defendants in the case. There are three fatal flaws in what the plaintiff is trying to do in this case, bringing claims under the Consumer Fraud Act, which is referred to as ICFA, and the Deceptive Trade Practices Act, which has an acronym that I can't pronounce. The first is that they're basing their claim entirely on environmental law violations, and you can't do that. The second is that there are, in the scenario of the business relationship between the plaintiffs and the defendants, there are no consumers actually involved, as that term is defined in the statute. And the third is that their claim that what we fail to disclose is that our products are, quote, illegal, end quote, as alleged in the Second Amendment complaint, represents a misrepresentation of law that is not actionable, and they have not alleged that that law cannot be determined by the customers of the plaintiff or the defendant. As to the environmental law claims, their sole basis for arguing that we did something illegal is the Detergents Act, and for two of the defendants, the board rules regarding the VOM chemicals. There is no place, and I urge you to scour the Second Amendment complaint, there is no place in that complaint where they accuse us of anything, any wrongdoing that does not refer to one or both of those legal provisions. These are clearly efforts to bring environmental law claims using the consumer fraud and trade practices statutes, and you cannot do that for a couple of reasons. First, this would amount to private rights of action brought under statutes that do not allow for them. Counsel, you're making a standing argument. The plaintiff is not attempting to stand in the shoes of the consumers, are they? They never asserted that they were consumers. No, no, the plaintiff is not a consumer, no, Your Honor. I know, and they're not saying that they're consumers. They're not saying that they're consumers. But if you're referring, Your Honor, to the Consumer Next test, that's the second argument that I was going to make, but I can go to it now. No, I just... No, no, they're not... It sounded like you were making a standing argument, and I wasn't sure I understood why. No, Your Honor, the absence of a private right of action under the environmental laws is a separate problem that dooms this case. The private right to apply a private right of action is a very stringent test. This Court has talked about it in the Channing case, very recently in the Metzger case, in lots of cases. No analysis like that was ever done. Instead, the Fifth District came up with a very facile, if you don't mind my saying so, workaround of that, where they said, oh, you're not suing under the statutes. You're just using those statutes, a violation of the statutes, as evidence of a different law. Well, Your Honor, if this Court accepts that, it's going to make a very, very big hole in the rules about when you can apply a private right of action, because any lawyer can argue, well, I'm not suing under the statute. I'm just arguing that it's evidence of a violation. There are cases where you can use statutes that way. Negligence cases are a good example. In a car accident case, you can argue, well, the defendant was at fault in part because he was speeding. He violated the speed limit, which would be an ordinance or statute. But negligence cases are cases where the Court, and maybe even the jury, determines whether the conduct violated a negligence standard. There is no statute about negligence. These are statutory claims where the conduct that's involved is defined by the general assembly. So there is no private right of action. And what the Fifth District essentially allowed would go around that rule. In addition, particularly the Detergents Act, but also the Illinois EPA, exclusively reserve enforcement power to the state. They say so precisely. So is there a difference between saying you have too much of a certain product or material in your product versus saying you are committing fraud by not informing consumers that you're in excess of what's allowed in the product? Well, Your Honor, these statutes deal with deception and fraud. And they're seeking to enforce standards about what can and can't be in products. Their claim, ultimately, that underlies what you're talking about is that the products are illegal and that we don't say so. Because you've got to have some assertions in a consumer fraud or deceptive trade practice. But you would have to go beyond just proving that the products are illegal, right? Yes, you would have to go beyond that to talk about what was said about the product. Were the labels accurate? But underlying that would be the question, were they in fact? And that's an environmental law determination. And that's the only way the complaint ever talks about it. And trying to do that is attempting to enforce those statutes. The plaintiffs in this case are seeking every kind of civil relief you can get, compensatory damages, punitive damages, injunction, and attorney fees. The state, if it were trying to enforce these laws, could ask for no more than that. And as we get back to the point in Section 92-5F, the Detergents Act in particular says it is the exclusive function of the state to enforce this law. The plaintiff has made an argument about home rule. But if you construe that statute the way statutes are construed, the second and third sentences entirely address home rule by themselves, which means the first sentence has to mean something else. And what that first sentence has to mean under its plain language is that it reinforces the notion that private parties can't enforce these laws, which is what the plaintiffs are trying to do in this case. The second problem with what the plaintiff is doing is that there aren't any consumers involved in this transaction. I would commend to the Court the Seventh Circuit's decision in Williams' case. And here we're applying the consumer nexus test. This Court has never considered that, but a lot of Illinois appellate courts have applied it, and so have a lot of federal courts. And the Seventh Circuit made the point, considering the purpose of the consumer fraud statute, which is to protect consumers, that business purchasers who buy something to use in their delivery of what they do are not consumers. Can businesses be consumers? They can be, yes, Your Honor, depending on what they do with the product. There's the Lefevre case, which I'm not sure is good law anymore after Williams, but that was a case about a printing press, and the printer bought it. But I would commend to you the Tile Unlimited case where Judge Feinerman talked about that case, and he talked about the difference between a piece of equipment that a business buys and keeps and uses and an input into what it does. And in this case, the cleaning solution that is sold to carpet care professionals exclusively by the plaintiff and by the defendants does not fall into that sort of permanent equipment category that the printing press does. So, yes, businesses can be consumers. But in this case, the businesses, the product that the carpet care professionals buy from my client, from the other defendants, and from the plaintiffs is used in the delivery of their service. It's not a piece of equipment. It goes out, it goes into the carpet, it gets rinsed out and taken out, and it's gone. It is not light. I mean, I'm not a carpet cleaner, but I think the analogy to the printing press and the carpet cleaning business would be that big machine that they push around that makes all the noise. I just asked whether businesses could be consumers. Yes, they can. They can be consumers, Your Honor, although it's pretty rare. But again, in the cases that talk about businesses being consumers, they're purchasers of something. This is not a lawsuit where the plaintiff's bought something from my client or the other defendants. In this case, they're suing competitors. So they're not acting as consumers here. And there is no consumer nexus that that test is going to be applying. There isn't even any interaction with the only consumers in this scenario, which are the people who want their carpets cleaned or the businesses that want their carpets cleaned, who hire our customers, the defendant's customers, the plaintiff's customers, to do that. Counsel, taking the plaintiff's allegations as true, what would their remedy be for what they're complaining that the defendants did? Do they have a remedy? And if so, what is it? Their remedy would be to go to the Illinois Environmental Protection Agency, to the Pollution Control Board, to the Attorney General, and say there's an environmental law violation going on here. Doing something. Do something about it. And you've got to wonder, Your Honor, where are all the cases if you can sue about this? But they do have remedies. There are environmental law violations. People, businesses, people who are affected by it can go to those agencies, and they can enforce the law. For all I know, the plaintiffs did that. And maybe they were turned away, and the enforcement authority said there's not an interest. But that is their remedy. This, a private lawsuit for damages, is not their remedy for environmental law. Not in Illinois. There's a comprehensive environmental regulation scheme. Agencies, statutes, all of that stuff, and private lawsuits don't fit in. Finally, the plaintiff's case is based entirely on misrepresentation of law. Again, scour the Second Amendment complaint. What they accuse us of at every turn is failing to disclose that our products are, quote, illegal, unquote. Now, I think that's kind of a fanciful construct. Nobody, maybe cocaine dealers have to do that. But no one is ever going to put on their label, By the way, our product is illegal. But that omission that they accuse us of is clearly an omission of law because it is an omission about the legal status of the products. And you don't get around that the way the Fifth District did by saying, oh, the fact of its illegality is a fact. Again, as with their environmental law argument, if that's the law, it's going to make a great big hole in the rule that was most recently discussed at McIntosh that fraud is not actionable based on an omission of law or a misrepresentation of law. And that's what these clearly are. They're solely based on an alleged violation of the statute and the board rules. Now, this court did say in McIntosh that you can, that sometimes the law will be, I don't think the word was used in the case, so obscure that it can't easily be determined. But that's an allegation the plaintiff has to make. And the plaintiff, as this court said in McIntosh, McIntosh lost his claim because he never alleged that he couldn't figure out what the Chicago's bottled water sales tax ordinance means. And he never alleged, I can't figure this out, Walgreens can figure it out, but I can't. The plaintiff has never alleged anything like that about these statutes. And again, it particularly makes sense to apply this rule in a case like this. These products are sold exclusively to businesses that use carpet care products every day. This is not, the customers here are not mom and pops. They're people who are in the business. And the notion that they can, that they can look at, you know, figure out, hey, is this too much phosphorus, is this too much VOM, they're professionals. They can do that as easily as anybody else can. But even regardless of that, that's just why it makes sense. It was the plaintiff's burden to plead that they could not. And they did not do so. And I suspect they didn't because it didn't make any sense. But regardless, that's a failure of pleading on a claim of misrepresentation of law. And that's the third reason, and I think the final reason, that their case should have been dismissed. Judge Rudolph wrote a very comprehensive opinion. I would commend it to the court. And we would ask that the Fifth District's decision be reversed and that the case be sent back to the circuit court for dismissal of the complaint with prejudice. If there are no further questions, I will yield back the rest of my time. Thank you. Counsel for the appellee. Good morning, Your Honors. May it please the court. There are three reasons the appellate court's judgment should be affirmed. The Home Rule provision of the Detergents Act, Section 92-5F, does not purport to make the state the sole enforcer of Illinois environmental laws. And that's crucial. The defendant's entire point one rests on the proposition that Section 5A does make the state the exclusive enforcer, such that any private action that might have an incidental effect of enforcing environmental laws is barred. But this court recognized in the City of Chicago v. Roman, which we cited in our brief, that the General Assembly has used the exact kind of language that you find in Section 5F to preempt Home Rule authority in, quote, many statutes. Defendants say that interpreting that language as only a limit on Home Rule authority does not give effect to all of the language, but that applies in the face of Roman. Roman never said that any of that language was surplusage. And it's been used in many statutes. The Roman court cited 11 statutes, 10 of which used very similar language to that, if not identical, to Section 5F. So your argument is that this is, that the statute does allow a private right of action? Yes, it does, before the PCV. And I will get to that when I discuss point, which point is that, point two. But, yes, it does permit a private right of action before the Pollution Control Board. A private right of action in the sense of a claim for damages? No, it permits an enforcement action in front of a PCV court. Any person can bring an action. It doesn't even have to be an Illinois citizen. It can be brought against any person who has violated the EPA, the Environmental Protection Act. That's not your lawsuit here. Pardon me? That's not your lawsuit here. That is not this lawsuit. Okay. So how do we go from enforcement before these agencies to, is there a private right of action to bring a claim for damages? Well, I can jump to that very point, if you would like. Because there are two provisions of the statute. One is 41D1, and it permits a private right of action, not a private right of action, but an enforcement action by private persons before the PCV. Okay. But what about this lawsuit? Is that what this lawsuit is? That is not this lawsuit. Where in the statute do you see, or what is your analysis as to how there's a private right of action to bring a claim for damages as you have here? Okay. Let me be clear about something. We have cited the Constitution provisions about environmental actions, private actions, and we cited the Illinois Environmental Protection Act for the clear, just to make this one point, the state is not the exclusive enforcer of the state environmental laws. There are different avenues that private persons can take to enforce the environmental laws of the state. Either damage in action or before one of the boards? Well, under Section 35, there is an action to, when there has been actual harm, or adverse, when a party has been adversely affected is the language of the statute. We've quoted this in our brief. Then he can bring, that person can then bring an action in the circuit court for injunctive relief. But that's not the allegation here, of course. It's very similar to what we're doing here, but this is not an action under the environmental laws. This is an action for unfair competition, unfair business practices. And, in fact, if you think about the relief that the plaintiff seeks here, it's lost profits. The lost profits that were caused by defendants laying up in the market because they're using phosphorus and VOM in their cleaners. Counsel, how would you calculate that? Pardon me? How would you calculate the lost profits? Say you were entitled to those damages. How would you calculate that? Well, that is not an issue on this appeal. I know, but I'm asking anyway. There is case law on how you go about proving lost profits. In a case like this, under these facts, how would you calculate that? Well, that is evidence that my client will have to marshal when we reach that point. But we're not there yet. We're at the very incipient stages. We were dismissed before an answer was filed. So we're just at the threshold pleading stage. Another question. Did your client file any action before any of the state or federal agencies, as your opponent suggested you should have? No. It would be an action in the PCB. It would be a proceeding in the PCB, the Pollution Control Board. But the relief that my client seeks, the damage to his business, can't be achieved there. Neither can an injunction. An injunction would have to be sought in the circuit court. And the EPA, the Environmental Protection Act, provides for that. So it provides for two different things that could be done, neither of which would take care of my client's problems. I'm just asking because I'm trying to understand, really understand your argument. The crux of your argument is that the competitors, the defendants, are using illegal or toxic substances that's not permitted by the state or the federal government in their products. So it makes the product more effective, and therefore consumers like it, so they're buying it. And you want them to stop because it's your client wants them to stop because it cuts into their profits. Right. That's your basic argument, right? Right. So my question, again, was did you take any action with any of the agencies that are statutorily charged with making sure that products that are put on the market and out into society for the consumers are adhering to the standards that are necessary? Could a court do that or couldn't the EPA or some other agency that's charged with that responsibility be required to take action? My client is interested in riveting his losses, and I was retained at the appellate level on this, so I'm not sure, but I don't believe that Triplex has been to the PCB. It has not gone to the Pollution Control Board because what it's trying to recover is lost profits. So your client doesn't really care about the toxicity of the substance. He's concerned about the profits. Is that your argument? I wouldn't say that he's not concerned about it, but it's not his primary concern. You know, this is a business, and the business is seeking to recover lost profits, and as to your earlier question, there is evidence of the efforts that were taken and what share of the market he expected to gain. I say he. It's a small family-owned business, but it's not that he doesn't care about the environment. His main concern is about his business, and that's why this is a business lawsuit. Then how does he bring a consumer fraud case? Well, a consumer fraud case can't be based on— In other words, you just made very clear that the purpose of this lawsuit is to recover lost profits. It's not to stop the sale of chemicals that may be dangerous. My real question is, can you be really clear and state first, what is the injury to your client that is the basis of your standing? He's not been able to sell the product because people don't buy it, because they can buy these other products that don't comply with the law. They're not green, and they do a better job of cleaning. And he is seeking both. He is seeking both to recover lost profits as well as to stop the practice, because it's not just a violation of environmental laws. It's also anti-competitive. It's an unfair business practice. So then if the focus of all this is the business practices and the lost profits, how is he a consumer? He is not a consumer. Triplex is not a consumer. Triplex has standing under ICFA, under the consumer nexus test that counsel mentioned. Why don't you explain to us, since you've been really focusing on the business aspects of this, how do we stretch or take that idea and make that – how do you demonstrate the nexus to the consumer? When the concern, what you just told us, was lost profits to the business. Well, that's his injury. The injury to consumers is they are actually in violation of law. These carpet cleaning companies are in violation of law when they merely purchase the product. The statute and the regulation that are involved ban the sale, purchase, use of these products in Illinois. With the Cosper's products, a very narrow exception exists. But that is the injury, and that conduct is directed toward the consumers. Here, the carpet cleaning businesses, and they can be consumers. Businesses can be consumers. And I don't think it is all that rare. They have to be consuming the product. And it really goes to the definition of who a consumer is under the Consumer Fraud Act. If I might jump to that right now. I think we've adequately briefed this issue, but I will jump quickly to point two. And one thing I want to point out about point two is that it's a challenge exclusively to TriPlex standing under the Consumer Fraud Act. Defendants have not challenged TriPlex's standing to assert its claims under the UDTPA. And also, the defendants have not asked this court to overrule the consumer nexus test, which has been applied by many courts as counsel acknowledged. So really, the only question that point two presents is who are consumers in this case? And it defines consumer as, quote, any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business, but for his use. That's section 1E of the Consumer Fraud Act. Section 1C defines person. The term person includes any natural person. And it goes on and lists a bunch of others, including a partnership, a corporation, company, trust, or business entity. So, and if a consumer includes any business entity who purchases or contracts for the purchase of merchandise not for resale, carpet cleaning solutions here weren't resold, not for resale in the ordinary course of the business entity's trade or business, but for its use. And by definition, that's a business use. Obviously, a business entity's use is going to be a business use. Defendant's contention that carpet cleaning businesses cannot be ICFA consumers merely because they are businesses, which is what they've said in their brief, in both of their briefs, is simply an irreconcilable misreading of the Act's simple and straightforward language. And it conflicts with the case law interpreting and giving effect to that very straightforward language. So you're not bringing, the interest here, the standing here is not on behalf of your client, but you're saying your client is asking for lost profits to protect the interests of the customers who do not buy your product. Two separate things. When a business competitor brings a consumer fraud act because he or it has standing under the Consumer Nexus Test, the damages to that competitor are not somehow damages to the consumer or the market. The question is, is the conduct directed toward the market, and are there consumer protection concerns that are implicated? And here they clearly are. I mean, these companies are selling products that have been more or less banned by the state of Illinois, and they're selling them and people are using them, which is clearly not what the legislature intended, and the consumers are unwittingly put in the position of violating the law. They don't even know it. They don't know what the content of the phosphorus is in these cleaners. They don't know what the content of the VON, the volatile organic material is in these cleaners. They have no what, counsel argues that, you know, they could easily figure this out. They're not chemists. They're carpet cleaners. They're carpet cleaning guys. That's who these people are. They can't look at the law and read it and say, ah, there's a violation because they don't have the information. I'm a little confused with where your argument's going on. You agree that the plaintiffs in this case are not consumers. Correct. Okay. So then the plaintiff has to satisfy the consumer nexus test. So tell me, could you lay out those for me, the four provisions, and tell me how your plaintiff meets that nexus test? The consumer nexus test requires a showing that there is, that the conduct, the alleged conduct is directed at the market, the consumers, or that that conduct implicates consumer protection concerns. That's what the consumer nexus test is, and I think that's easily satisfied here. Isn't there a provision that the plaintiff must show that there is a, that he is akin to the consumers that he is complaining against? Not for the business competitor who sues under the Consumer Fraud Act. Is there an exception for business, the consumer nexus test has an exception for business competitor? The statute has been interpreted by the appellate court and federal courts, as counsel acknowledged, for a number of years, and the consumer nexus test is to show, there has to be a nexus to consumer protection. I know, but it sounds like you're suggesting that there is an exception for business competitors. I'm not aware of that. An exception? Well, that's what, it sounds as though you were. The consumer nexus test is for businesses suing other businesses, and because of that, the kinds of damages that they sustain as a result of their competitors' unfair business practices are not the same as what, you know, the concerns are for the consumer. Can you direct us to a case where it's two competitors, the plaintiff and the defendant are competitors? Could you repeat that? This fact scenario here, where the plaintiff and defendant are competitors. Yes. Where is it? What cases show that the solution is showing of this nexus, consumer nexus? What cases? Well, the one that we've discussed in our brief is the Kim case, which discusses the consumer nexus test, and that has been applied by the appellate court for a number of years. Can you analogize that case to the facts of this case? That particular case? Yeah, because that's the one that you're relying on, and I am, my question is just how does that case, not only the holding, but the facts relate to the facts that are before us in this case? I don't think they do, so I'm just asking you to maybe highlight for me those parts of the facts in that case that you think pertain to the case before us, and how does that support your argument? Okay. So if you look at all of the cases and the law that- I want you to go back to that one, because that's what you have relied on, and I would just like you to- I've relied not on the facts of that case, but on the tests that that case and other cases have laid out, which allows businesses to sue other businesses under the ICFA if there is a connection, if there is a nexus between the wrong that's alleged, the wrongful conduct that's alleged, and the effect on consumers. If it's conduct that is directed at consumers, which clearly this is, they're selling banned products to consumers, then a business competitor who is harmed by that conduct can sue to recover for that harm under the consumer product. Thank you. Returning to the initial point, it's clear that the state is not the exclusive enforcer of the environmental laws in this state. And defendants contend that the first section of 5F would be rendered surplusage. That's the sentence that talks about it being an exclusive function and power of the state to enforce environmental laws. But that is the same language as I've indicated is used in other provisions like this. And in the Roman case, and I see my time is up, I'll just read this last quote. In many statutes that touch on countless areas of our lives, the legislature has expressly stated that pursuant to Section 6H or 6I or both of Article 7 of the Illinois Constitution, a statute is declared to be an exclusive exercise of power by the state and that such power shall not be exercised by home rule units. So this court has recognized that that language is not surplusage. See my time has expired? Thank you. Thank you very much, counsel. Your Honors, I'll start where Mr. King ended. Roman is a case about whether home rule was specifically enough limited. We don't dispute that Section 92-5F acts in part as a home rule limitation. But the second and third sentences do that entirely by themselves, which means the first sentence has to mean something else. It can't be surplusage. And yes, we do dissect statutes sentence by sentence, sometimes word by word. In the last case, you were talking about passive voice. So you look at the whole statute. The state is the exclusive enforcer of the environmental laws. And if, as Mr. King contends, these products are banned, where is the Pollution Control Board when someone is selling banned products? Now, there is a factual answer to why these products are not toxic and not illegal. It's not in the record yet, and I can explain it, and I will if the court wants me to. But beside that fact, there is no indication that human health is threatened or anything like that. There's some loose language about it in the Second Amendment complaint and in the Fifth District's opinion. There's no allegation about toxic substances or people in danger. There is no way Mr. King struggled mightily to take his action for damages and call it something other than what it really is, a private right of action, seeking lost profits as a result of environmental law violations. But he canceled it. That doesn't matter. The consumer nexus test is met. Right. No, I understand. And the consumer nexus test is not met in this case. The court asked about whether there are cases between competitors. The two paradigms of that are the Downers-Grover-Squiggleworth case and the Empire Carpet case, in which competitors sue the competitor about false assertions made to the market. There is no real allegation in the Second Amendment complaint that we say anything false. There's no assertion that our labels don't describe our products. You've got to look at the Second Amendment complaint. What it says is what's wrong with our labels. Before you get there, we're trying to figure out what does this nexus mean. How close is the nexus? Welcome to the club, Your Honor. You guys have dodged this for a long time. Well, I mean, here it is. Here it is. So in the cases you've cited or the case of Kim that your opponent says is the deciding case here, what are the facts? What are the relationships between the plaintiff and the defendant? What are the relationships, most importantly, between the plaintiff and the consumer? Well, Kim was about a third party claiming on an insurance policy, and the court basically said there wasn't a relationship like that. But I would refer the court more specifically to Empire and to the Downers-Grover-Squiggleworth cases. Those are cases brought by competitors, so that was their relationship. But what was in those cases that is not in this case is alleged false communications made to consumers. Let's take the Empire Cleaning. You remember that case, do you? Well, you just said it, but it just, you know, we're talking about carpet cleaning. So how did the court analyze this? What was the nexus between the plaintiff and the consumer? The nexus was that the defendant was communicating allegedly falsely with consumers about who people, people who were going to buy carpet and who thought they were calling Empire. Advertising? Yeah, and they were, no, what it was, it was a false phone number. It was a misleading phone number. Anybody who's lived in Chicago for more than an hour knows the, you know, the jingle. I'm not going to sing it because I've never sung it in an oral argument. But there's a jingle and there's a phone number for Empire, and there's commercials that go on forever. I don't know if they made it as far, you know, south of I-80, but they were there all the time. And this company, the defendant in the Empire case, picked a misleadingly similar number and took other actions to fool people who called it to thinking they were talking to Empire, when in fact they were not. And so Empire sued about that. But those were communications that misled consumers. Those people were not business purchasers. They wanted to buy carpet for their homes, and they thought they were talking to one company, but they were talking to another. That doesn't exist in this case. So, counsel, is your point there's not that necessary connection to the consumers here? Yes. So you're talking about Empire, and in Downers Grove we know that there was material sent out, a pamphlet of some sort sent out to a competitor with false allegations. No, not to a competitor. I'm sorry, to consumers. To customers, to potential customers. With false allegations. Yes. That was Downers Grove. In Empire it was the phone number and what happened when you called them on the phone. But in this instance. The consumers are people, the only consumers in this scenario are people who want their carpets cleaned. People who are going to hire my client's customers. And nothing has been sent to them. There's no communication with them at all, Your Honor. There's no interaction with them at all. When the product is made available to the customer, to the carpet cleaning professional, and the product is sold in this state, there is a representation that it meets the statutory requirements for carpet cleaning solution. There isn't, Your Honor. There is a label that describes what's in it. And I guess that's a representation about the contents of it. But if there was an illegality, as in McIntosh, that was something that the customers, the carpet cleaning professionals, could figure out for themselves. They don't have to be chemists. They've got the internet. You can Google how much phosphorus you can have in your detergent and you will get an answer. And it's just both these statutes, the VOM board rules, they're just numbers. But there's no allegation in the second amended complaint that our labels aren't accurate or complete. What the complaint says, Mr. King doesn't say that, but the complaint that he's stuck with, because he said he got here late, is illegal is the word that's missing. That the label should say this product is illegal under Illinois law. Nobody's going to do that. But anybody, and certainly somebody in the carpet cleaning business who uses this product every day, can figure out for themselves whether it's illegal or not. But if they can't, it was the plaintiff's job to allege that. So there is no problem with these consumers figuring out, there are no consumers in this case, but the business purchasers, the carpet cleaning professionals, can figure that out for themselves. And there's no allegation that they can't. Let me take a moment, Your Honor. I guess to come back to the point that the Chief Justice was asking about, Mr. King was very candid. This case is about lost profits. Lost profits do not implicate consumer concerns. The consumers in this case are people who want to buy carpet cleaning services. There's no allegations in the complaint about them. There's no communication with them. In fact, they argue the opposite. The consumer impact is not there. The case is based solely on environmental law violations. And saying we have to disclose that our products are illegal is a misrepresentation, or an omission rather, and we don't, is an omission of law that is not actionable under these statutes. And there is no indication that that law is so obscure or difficult that regular folks, even regular carpet cleaners, can't figure out by reading the labels what they're buying. So has the plaintiff failed to satisfy the consumer nexus test? Yes. The plaintiff has failed because he hasn't identified it. It hasn't identified an interest of consumers as defined in that statute. Not business purchasers who are buying something to use in their own business. Not even in the fever case. Not even a machine that they're buying that they're going to keep, but something they use to deliver what they do in their business. Those people aren't consumers. People who want their carpets cleaned are consumers, and they're just not in this case. And, yes, Your Honor, that means they haven't satisfied the consumer nexus test. Thank you. Thank you very much. Both sides. All right. This is Agenda Number 9, Number 129-133, Traffic and Technical Services Limited v. John Donahue, et al. And this case will be taken under the